IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| IN RE: | ) |
| | ) Chapter 13 |
| BENJAMIN MATTHEW BENNETT | ) |
| AND TERESIA ROBIN BENNETT, | ) |
| | ) Bankruptcy No. 16-01254 |
| Debtors. | ) |

**MEMORANDUM AND ORDER RE: THE PADDOCK'S OBJECTION TO
DEBTORS' PLAN BASED ON 11 U.S.C. § 1322(b)(2)**

This matter came on for hearing in Cedar Rapids on February 22, 2017. Rush Shortley appeared for Debtors Benjamin Bennett and Teresia Bennett ("Debtors"). Siobhan Briley appeared for Creditor The Paddock LLC ("The Paddock"). The Court took the matter under advisement. The parties filed briefs. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

## STATEMENT OF THE CASE

The Paddock has a secured claim in Debtors' manufactured home. Debtors propose a plan that would bifurcate The Paddock's secured claim into secured and unsecured claims. The Paddock objects. The Paddock argues that § 1322(b)(2)'s antimodification provision prohibits bifurcation because the manufactured home is real property that serves as Debtors' primary residence. Debtors argue that the manufactured home is not real property, so § 1322(b)(2) does not apply. The Court agrees with Debtors.

## FINDINGS OF FACT

Debtors live in a manufactured home located at 222 Hackney Court, Iowa City, Iowa ("the home"), in a neighborhood operated by The Paddock.  As a part of its business, The Paddock rents and sells manufactured homes that have been installed in its neighborhood.

The home was installed sometime in 2003.  Debtors rented the home from 2003 until 2007 when they purchased it from The Paddock.  The Paddock provided financing for the home under a Manufactured Home Installment Contract and has a secured interest in the home.  Debtors also entered into a 990 year lease for the lot under the home.  Debtors pay The Paddock a $134 monthly association fee under that lease.  Debtors use the home as their primary residence.  Debtors pay personal property tax for the home.  The Paddock pays the real property tax for the lot.

Debtors filed Chapter 13 bankruptcy.  The Paddock has a claim against Debtors that is partially secured by Debtors' manufactured home.  Debtors filed a Chapter 13 plan that proposed bifurcating the Paddock's claim into a secured claim and an unsecured claim.  The Paddock objects.  The Paddock argues that § 1322(b)(2)'s antimodification provision bars Debtors from bifurcating its claim.  Whether this provision applies depends on whether the home is real property.  Whether the home is real property depends in large part in this case on how the home is attached to the ground.

Debtor Benjamin Bennett testified that the home sits on piers and blocks, not a concrete foundation. Although there is skirting around the home to cover the space between the home and the ground, Mr. Bennett testified that there is no foundation behind the skirting around the home. He has looked behind the skirting many times. In fact, he has had to raise a particular pier a number of times to adjust for sinking ground to keep the home level.

The Paddock offered testimony from Sarah Slaymaker, a current manager at the site. Ms. Slaymaker testified that the home was on a full concrete foundation because the other manufactured homes she was familiar with were on such foundations. She testified that the foundation was behind the skirting on the Bennett's home. She testified that the wheels and axels that were used to move the home onto the property were removed when the home was installed. She testified that the underlying structure, to which the wheels and axels attach, was probably still there because there was no reason for it to be removed. She admitted, however, that she was not working for The Paddock when the Bennett's home was installed and had never looked behind the skirting or under the home itself.

The Paddock also offered an appraisal report into evidence at trial. Debtors objected to the appraisal report as hearsay. The Court took the appraisal report subject to the objection. The parties agree that the appraisal report is hearsay, but disagree about whether the business record exception under Rule 803(6) applies.

"The most frequent type of opinion evidence in bankruptcy proceedings is in the form of an appraisal, which generally will not qualify as a business record for the purposes of Rule 803(6)." In re Roberts, 210 B.R. 325, 329 (Bankr. N.D. Iowa 1997). The Paddock put on testimony about the appraisal meeting the Rule 803(6) exception generally, but without more that is insufficient to show that the exception applies here. Therefore, Debtors' objection to The Paddock's appraisal report is sustained. Even if the Court were to admit the appraisal, however, the Court's analysis and ruling would not change.

The Court finds Mr. Bennett's testimony more credible than Ms. Slaymaker's testimony on this issue because it is based on first-hand knowledge. Even if the Court were to consider the appraisal report, it states that the home is on piers, which is consistent with Mr. Bennett's testimony. Therefore, the Court finds that the home sits on piers and blocks, not on a concrete foundation.

## CONCLUSIONS OF LAW AND ANALYSIS

In general, a Chapter 13 debtor can "strip down" partially secured claims. A "strip down" splits the claim into a secured claim and an unsecured claim, with the value of the collateral determining the value of the secured claim. 11 U.S.C. § 506(a)(1); United States v. Ron Pair Enterprises, Inc., 489 U.S. 235, 239 (1989) ("[A] claim is secured only to the extent of the value of the property on which the lien is fixed; the remainder of that claim is considered unsecured.").

Debtors seek to strip down The Paddock's claim to the home's value. The Paddock objects. The Paddock argues that § 1322(b)(2) bars Debtors from stripping down its secured claim to the home's value because the home is real property that is Debtors' principle residence. Section 1322(b)(2) provides:

> Subject to subsections (a) and (c) of this section, the **plan may**—
> . . .
> (2) **modify** the rights of holders of **secured claims, other than a claim secured only by a security interest in real property that is the debtor's principle residence**, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims . . . .

11. U.S.C. § 1322(b)(2); see also <u>Green Tree Servicing, LLC v. Coleman</u> (<u>In re Coleman</u>), 392 B.R. 767, 770 (B.A.P. 8th Cir. 2008) ("[T]he anti-modification provision [is limited] to a security interest in real property that is also the debtor's principal residence."). Debtors argue that § 1322(b)(2) does not apply because the home is not real property. The parties dispute only whether the home is real property. Thus, to determine whether § 1322(b)(2) bars Debtor from bifurcating The Paddock's claim, the Court must decide whether the home is real property under Iowa law. See <u>In re Coleman</u>, 392 B.R. at 771–72 ("State law controls . . . whether a debtor's principle residence is real or personal property.").

## I.     The Court's Decision in <u>Drahn</u>

This Court has previously found in another context that Iowa law generally treats manufactured homes as personal property. <u>In re Drahn</u>, 405 B.R. 470, 475

5

(Bankr. N.D. Iowa 2009). In deciding whether the sale of a manufactured home was a sale of real or personal property, the Court concluded that

> in the present context, Debtor's mobile home is considered personal property under Iowa law. The Iowa Supreme Court applied personal property law to mobile homes in Ford v. Venard. Further, the Iowa Code treats mobile homes in much the same way as vehicles. Iowa's tax law requires mobile home owners to fulfill certain requirements in order to convert their mobile homes into real property. Courts have found that mobile homes are personal property in states with laws similar to those in Iowa.

Id. (citations omitted); see also Iowa Code § 435.2(2) (manufactured home in manufactured home community is not taxed as real estate); Iowa Code § 435.26 (addressing conversion of mobile homes from personal to real property).

The Court finds that Drahn applies here and resolves the dispute. Although The Paddock notes, correctly, that Drahn addressed a contract dispute, The Paddock has not shown why it is limited to that context. The reasoning supporting Drahn's conclusion that manufactured homes are personal property applies with equal force here. The parties do not dispute that the home is a manufactured home or that it is in a manufactured home community. As a result, the home is personal property under Iowa tax law: Debtors pay personal property tax on the home and The Paddock pays the real estate tax for the land. There is no evidence that The Paddock or Debtors have taken steps to convert the home to real property. Thus, the Court holds that, under Iowa law, the home is not real property. Consequently, § 1322(b)(2) does not bar Debtors from bifurcating The Paddock's claim.

6

## II. Iowa Law Analysis

Even if <u>Drahn</u> does not apply here, however, the Court finds that the home is personal property under Iowa law. Iowa law, and the standard it applies for analysis, is set out in <u>Ford v. Venard</u>, 340 N.W.2d 270 (Iowa 1983).

Under Iowa law, personal property becomes real property when it becomes a fixture. <u>See</u> <u>Ottumwa Woolen-Mill Co. v. Hawley</u>, 44 Iowa 57, 60, 1876 WL 667, *2–3 (1876). The Iowa Supreme Court has summarized "fixtures," their transformation from personal into real property, and the difficulty of deciding when something becomes a "fixture," as follows:

> Fixtures are a species of property which are the dividing line between real and personal property, and to decide which side of the line certain property belongs is often a vexatious question. When we compare a thing at the extremity of one class with a thing at the extremity of another the difference is obvious, but when we approach the point of division difficulty arises in discovering where the distinction should be drawn.

<u>Id.</u> Iowa courts have developed a test to decide this "vexatious question":

> Personal property becomes a fixture when
> (1) it is **actually annexed** to the realty or to something appurtenant thereto;
> (2) it is **put to the same use as the realty** with which it is connected; and
> (3) the **party making the annexation intends** to make a **permanent accession** to the freehold.

<u>Ford</u>, 340 N.W.2d at 271 (quoting <u>Cornell College v. Crain</u>, 211 Iowa 1343, 1345, 235 N.W. 731, 732 (1931)) (internal quotation marks omitted) (emphasis added).

7

On the first question—whether the home is "actually annexed" to the real estate, there is little dispute. Case law appears to support The Paddock on this question. See Thomson v. Smith, 111 Iowa 718, 83 N.W. 789, 790 (1900) (quoting Walker v. Sherman, 20 Wend. 636 (N.Y. Sup. Ct. 1839)) ("It need not be so fixed that detaching will disturb the earth or rend any part of the building." (internal quotation marks omitted)). The factual record shows at least minimal annexation. Mr. Bennett testified that the home is on piers and blocks, and even if the Court considered the appraisal report, it also states that the home is on piers.

On the second part of the test, however—whether the home is put to the same use as the realty—the Court finds that the record is less than clear. Debtors bought the home from The Paddock. Debtors lease the land from The Paddock, which continues to own the land, and pay a monthly association fee under the lease. Debtors pay taxes on the home itself, while The Paddock pays the taxes on the real estate. The record could certainly be read to show that Debtors use the home as a home while The Paddock uses the real estate for income and continued possession. These are not necessarily the same use. The Court need not resolve this specific issue, however, because the analysis on the third prong is dispositive.

The third prong is whether the party who annexed the property intended to permanently make it part of the real property. This prong is generally considered the most important: "The intention of the party annexing the improvement [is] the paramount consideration in determining whether [the property] is a fixture or a

permanent part of the realty." Cornell College, 211 Iowa at 1345, 235 N.W. at 732. In making this determination, "[t]he method of attachment to the soil is of significance, but not necessarily a controlling factor." Id. "The method of attachment may, however, and under some circumstances does, quite conclusively establish the intention." Id. For example, "[a] building which cannot be removed without destruction of a substantial part of its value becomes 'almost unavoidably an integral part of the real estate.'" Ford, 340 N.W.2d at 272; (citing Crawford-Fayram Lumber Co. v. Mann, 203 Iowa 748, 753, 211 N.W. 225, 227 (1926)). Nevertheless, where there is clear evidence that the party intended the property to remain on the land permanently and used an impermanent method simply to avoid an adverse result (e.g., foreclosure), the property is a fixture. Cornell College, 211 Iowa at 1345, 235 N.W. at 732.

In general, Iowa courts have found structures with basements, foundations, or supporting structures deeply embedded in the soil to be fixtures. For example, a frame house with a basement, plumbing, heating, and a sewage system was held to be real property. Crawford-Fayram Lumber, 203 Iowa at 753, 211 N.W. at 227. In another case, a frame shop resting on stone and brick pillars deeply embedded into the soil was found to be real property. Peoria Stone & Marble Works v. Sinclair, 146 Iowa 56, 124 N.W. 772, 772–73 (1910). Where the buildings were "respectively placed upon posts and blocked up," however, they were not real property. Durband v. Noble, 182 Iowa 1271, 166 N.W. 581, 581 (1918). In

Durband, the Court focused on the fact that the building could be "removed from the land without difficulty or trouble, and the ground restored to its former condition." Id. These cases illustrate the kinds of attachments that conclusively establish the annexing party's intent to make the structure a fixture.

The Eighth Circuit B.A.P. has found that, under Missouri law (which was similar to Iowa's at the time), a manufactured home was personal property and so not subject to § 1322(b)(2). Green Tree Servicing, LLC v. Coleman (In re Coleman), 392 B.R. 767, 772–73 (B.A.P. 8th Cir. 2008). In that case, the home was secured to the land by standard tie downs and could be moved by jacking it up, attaching wheels, and hauling it away. Id. The Bankruptcy Court concluded that the home was personal property and the B.A.P. affirmed. Id. The Court makes the same finding on this record under Iowa law.

The Court specifically finds that the method of attachment itself does not show an intent to make the home a permanent accession to the property. Based on the record, the home is more like a structure on blocks than a structure deeply embedded into the ground. The home does not have a basement or a foundation. The home sits on piers and blocks. The Paddock did not show that the piers are deeply embedded in the soil. The only evidence addressing the issue at all is Mr. Bennett's testimony that one of the piers has been subject to ground sinkage, which indicates that they are not deeply embedded.

Ms. Slaymaker testified that there is no reason that the underlying structure, to which the wheels and axels attach, would have have been removed. Because that structure is still there, Debtors would simply need to reattach the wheels and axels to move the home. The Court finds that the home could be removed from the property and would not lose substantial value if it was removed.

Even if the Court considered the appraisal report, which describes the home as "permanently" affixed to piers, there is nothing else in the record to support that characterization. Other than Mr. Bennett's testimony, which indicates that the piers are not deeply embedded into the ground, there is no evidence in the record about how the piers are attached to the home or the ground. The Court finds that the method of attachment does not indicate an intent to make the home a permanent accession to the property.

The Paddock argues that the Ground Lease Agreement establishes the parties' intent to make the home a permanent accession. That agreement specifies that the home be "**permanently** affixed," have "**permanent** footings," and that "the Land Owner and Resident agree that the home shall be installed as a **permanent** improvement and **fixture**." This language is not dispositive, however, because the Ground Lease Agreement itself goes on to undercut these assertions. It expressly contemplates that the home could in fact be removed from the property: "the **Home** and any other improvements . . . may not be **removed** from the Home Site without prior written permission of the Secured Lender." The

11

Paddock admitted at trial that Debtors could move the home but noted that they would forfeit their lease on the land if they did so. The Court finds—especially in light of the fact that Debtors own the home while The Paddock owns the lot and charges Debtors a monthly fee under the lease—that the agreement does not clearly establish the intent to make the home a permanent accession to the real estate. The agreement itself and The Paddock's admission at trial undercut its assertion that the Ground Lease Agreement shows that the parties intended to make the home a permanent accession. The Court finds that the home has not met the test to become a fixture, and therefore is not real property under Iowa law.

## CONCLUSION

**WHEREFORE**, Debtors' objection to The Paddock's appraisal report, Exhibit E, is SUSTAINED.

**FURTHER**, The Paddock's objection to Debtors' plan treatment based on 11 U.S.C. § 1322(b)(2) is OVERRULED.

Dated and Entered:

April 20, 2017

_____
THAD J. COLLINS
CHIEF BANKRUPTCY JUDGE